18 UIN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

STATE OF TENNESSEE

COUNTY OF SHELBY

Case No. 22-SW-373

## ATTACHMENT C

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, **Keyotta Sanford**, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent with the FBI assigned to the Memphis Division and have been a Special Agent since January 2019. I am currently assigned to the Child Exploitation & Human Trafficking Task Force, investigating matters involving the sexual exploitation of children, human trafficking, and child sexual abuse material (CSAM). I have participated in various trainings and investigations involving online and computer related offenses and have executed numerous search warrants, including those involving searches and seizure of computers, digital media, and electronically stored information.

2.  I make this affidavit in support of an application for a search warrant for information associated with certain Block, Inc. identifiers: "$gafflegang20," "$hattierobinson56," "$HattieJR56," "$BabyjJassy," and "$honeymoongirl24," (hereby the Target Accounts), that are stored at premises controlled by Block, Inc., a financial services and digital payments provider headquartered at 1455 Market St, Floor 6, San Francisco, California 94103. The information to be searched is described in the following paragraphs and in **Attachment A.** This affidavit is made in support of an application for a search warrant under 18 U.S.C §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Block, Inc. to disclose to the government copies of the information

1

KS
12/15/22

(including the content of communications) further described in Section I of **Attachment B.** Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

3. Your affiant is investigating certain activities in violations of 18 U.S.C § 1591 (sex trafficking of a minor). Based on my training and experience, and facts as set forth in this affidavit, there is probable cause to believe that items which constitute instrumentalities and evidence of the aforementioned violations of 18 U.S.C § 1591 are contained within information associated within the Target Accounts which are described more fully in **Attachment A**.

4. The following information was obtained through the assistance of other law enforcement agents and agencies, including their reports, and through other sources specifically named in this affidavit. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence in violation of 18 U.S.C § 1591 will be located at the premises described in **Attachment A**, and consist of or be contained in the items in listed in **Attachment B**, both of which are incorporated by reference as if fully set forth herein.

## APPLICABLE STATUTE

5. Title 18, United States Code, Section 1591 makes it a federal offense for anyone, using a means of interstate or foreign commerce, to knowingly recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit by any means a person, that has not attained the age of 18 years, to engage in a commercial sex act or receive anything of value from participating in such a venture, or attempts to do so.

KS
12/15/22

## DEFINITIONS

6. The following definitions apply to this affidavit and **Attachment B**:

   a. As it is used in 18 U.S.C. § 1591, the term "coercion", is defined in 18 U.S.C. § 1591(e) as "threats of serious harm to or physical restraint against any person; any scheme, plan or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person or; the abuse or threatened abuse of law or the legal process".

   b. The term "commercial sex act," as used herein, is defined pursuant to Title 18 U.S.C. § 1591(e) as "any sex act, on account of which anything of value is given to or received by any person."

   c. As it is used in 18 U.S.C. § 1591, the term "serious harm" is defined in 18 U.S.C. § 1591(e) as any harm, "whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm".

   d. The term "minor," as used herein, is defined pursuant to Title 18, U.S.C. § 2256(1) as "any person under the age of eighteen years."

## COMMERCIAL SEX TRAFFICKING & THE INTERNET & CELL PHONES

7. Based on my knowledge, training, and experience, and the experience and training of other law enforcement officers in child exploitation and human trafficking investigations with whom I have had discussions, I know that the Internet contains many websites that are used to aid and assist in the advertising of prostitution. I also know it is common for those involved in Internet



based sex trafficking to exclusively utilize cellular telephones to run their prostitution enterprise. An Internet connected mobile device can be used to take pictures and/or videos, generate advertisements, upload images, and solicit or receive payments electronically. I know that these activities can be detectable through a forensic examination of the device.

### INFORMATION REGARDING CASHAPP

8. According to its website, Cash App is a mobile application owned and operated by Block, Inc. (hereby referred to as Block) a financial services provider. To register, open, or upgrade an account, Block may require a user to provide information, including but not limited to name, email address, text-enabled mobile phone number, address, date of birth, social security number and a government issued form of identification to Block.

9. Block categorizes accounts as either "Restricted" or "Unrestricted". When an account is first opened, it is considered a "Restricted Account". A "Restricted Account" allows users to link an "Eligible Bank Account" or debit/credit card to make a payment to another Cash App account and transfer funds from the Cash App Balance within the application to the linked bank account. In order to make a payment from the Cash App Balance within the application to another Cash App account, a user must upgrade their account to an "Unrestricted Account," which requires validation and authentication of a user's identity.

10. Block assigns each Cash App account a $Cashtag, which is a unique alpha-numeric username. Your affiant knows that users can search within Cash App by $Cashtag and that Cash App occasionally allows users to modify their $Cashtag username.

11. Block also provides peer-to-peer (P2P) services, which allows Cash App users to send and receive funds personal purposes. Any P2P payments received are stored in the Cash App Balance. Cash App requires additional identification for customers that attempt to send and/or



received large amounts of money. For example, you affiant knows that "Unrestricted Accounts" have a sending limit of $7,500 per week and $17,500 per month. The default receiving limit for Cash App account is up to $1,000 within a 30 day period. "Unrestricted Accounts" can have their receiving limited increased to an unlimited amount.

12. I know that Block retains records in accordance with federal banking laws, to include certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, financial service provider often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access accounts.

13. In my training and experience, information stored in connection with a Cash App account may provide crucial evidence establishing the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the government to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

14. Therefore, Block servers are likely to contain all the material descried above, including stored electronic communications and information concerning subscribers and their use of Block services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

KS
12/15/22

## INVESTIGATION

15. On September 14, 2022, the FBI Memphis Child Exploitation and Human Trafficking Task Force received information from the Memphis Police Department's (MPD) Internet Crimes Against Children (ICAC) that a 16-year-old female had been recovered at the Budget Inn located at 4030 Lamar Ave, Memphis, TN. Commercial sex advertisements of the minor victim, hereby referred to as JK, were reported to MPD by the Tennessee Bureau of Investigation (TBI) and Metropolitan Nashville Police Department (MNPD). The ads were observed on MegaPersonals.eu, which your affiant knows is an escort website used to promote and engage in prostitution. The post was associated with telephone number (901) 632-6920 and contained identifiable images and a video of JK which were sexually explicit, some of which would be considered CSAM or child pornography. In particular, your affiant reviewed the video on the post, which was approximately 24 seconds in duration and appeared to show JK nude and performing vaginal masturbation. Her face and vaginal area were clearly visible in the video.

16. The MPD Organized Crime VICE Unit contacted the number associated with the escort ad, (901) 632-6920, in order to set up a prostitution "date". After agreeing to pay $150 in exchange for sex with the minor victim, law enforcement was provided the address of the Budget Inn located at 4030 Lamar Ave, Memphis, TN. Dwezkita Robinson was identified by law enforcement and detained. While law enforcement attempted to detain Robinson, he was observed tossing a gold colored cell phone to another male. The phone was immediately retrieved. When law enforcement called the phone number associated with the escort ad containing sexually explicit material of the minor victim, the gold colored phone rang. An additional T-Mobile phone was seized from Robinson's person. Robinson was taken into custody and JK was recovered from inside the hotel room. A review of CCTV showed Robinson appearing to use a cell phone during

*KS 12/15/22*

the timeframe the MPD decoy was sending and receiving messages from the phone number on the escort ad (901) 632-6920.

17. On or around September 15, 2022, a State of Tennessee search warrant was executed to search the hotel room. A BLU Android cell phone was seized from the hotel room, which was later identified as belonging to JK's mother. A review of CCTV showed JK was in possession of a cell phone during the timeframe of the alleged criminal activity.

18. On September 15, 2022, a minimal-fact finding interview was conducted of the minor victim. While she made no disclosure, JK did acknowledge that she was aware of nude images of herself wearing purple underwear on an escort website.

19. On September 15, 2022, Robinson waived his Miranda Rights and agreed to be interviewed. Robinson advised he was in possession of two (2) cell phones which he claimed belonged to JK. When asked why he was in possession of her phones, Robinson told Investigators he was helping her by talking to "tricks" for her. Your affiant knows that a "trick" is a term commonly used by those involved in commercial sex and can refer to the act of committing prostitution or can reference a person receiving the sexual service, also known as a "John". Robinson explained he was aware JK used the escort website and helped her "bump" her ad. You affiant knows that to "bump" an ad refers to when an individual wants to increase their ad's visibility within the escort website. Robinson further advised he was aware of the images of JK on the escort website and that she was engaging in commercial sex acts.

20. On October 8, 2022, FBI Memphis ran the numbers, (901) 663-9872, (901) 239-7182, and (901) 632-6920, which were observed on the escort ads of JK through an ad aggregator. The ad aggregator creates a profile based on ads associated to the specific phone number or ads that have the same writing or pictures on them. As such, the ad aggregator linked 54 ads associated



with the profile identified as JK. From approximately June 24, 2022 to September 15, 2022, the ads were associated with Memphis, TN, Nashville, TN and Little Rock, AR. The ads were posted via the escort sites MegaPersonals.eu and OneBackpage.com. Furthermore, all of the phone numbers were identified as being registered to T-Mobile USA.

21.     On October 11, 2022, a federal search warrant was executed in the Western District of Tennessee to search devices seized by law enforcement, which were associated with Robinson and the sex trafficking of JK. Two of the devices searched, a silver-colored iPhone S model that was seized from JK and A black colored iPhone with a red and clear cover seized from Robinson, were in connection with a 7/22/2022 Nashville, TN operation in which JK and another minor female were recovered from suspected sex trafficking. Another device searched, a Samsung Galaxy cell phone seized from JK, was in connection with a 7/28/2022 Memphis, TN operation in which JK was recovered from suspected sex trafficking.

22.     Pursuant the federal search warrant executed on October 11, 2022, Investigators reviewed the forensic examination of the black colored iPhone, which appeared to show messages referencing commercial sex dates, to include agreements upon sex services to be provided, costs of services, and locations to meet. Investigators also reviewed the forensic examination of a BLU Android phone, which was seized from JK around 9/15/2022. The phone appeared to have been logged into the suspected Facebook account of JK and showed a conversation with an individual with the display name "Byrd". Robinson is known by the aliases of "BG" and "Byrd". The Facebook account with the display name "Byrd" also had an image of a male which appeared visually similar to Robinson. The following is an excerpt of a Facebook Messenger conversation between the suspected Facebook account of JK and the suspected Facebook account of Robinson around 9/14/2022:

KS
12/15/22

**Facebook Messenger on 9/14/2022 (in part)**

...

| | |
|---|---|
| JK | Oh ok otw to my house |
| **Bryd** | Ite u should been here u B's u miss about 4 or 5 play |
| JK | ts so cap they ain't coming like that |
| **Bryd** | Ong that is ad U B's see that the shit I be talking about everything's else coming before me ad that crazy |
| JK | I'm finna be otw I'm finna change it to outcalls too or u must need me there with u |
| **Bryd** | Nah I need u here with me |
| JK | Cuhh what ian even post myself the hotspot bsn so how df I get play already n ite |
| **Bryd** | On my ad |
| JK | huh<br>How u get a ad |
| **Bryd** | I pay my homeboy that lil ass $50 u gave me on cash app to make one |
| JK | df don't post me on ur shit cuh cs u rlly got that ho for your other hoes ion gaf df |
| **Bryd** | Why u ask to much? U al in my business that out a p business what I told u about that shit Soo bring your ass to me now |

23. On December 12, 2022, JK was forensically interviewed by an FBI Child Adolescent Forensic Interviewer. JK disclosed Robinson was aware she was underage and offered to help her make easy money. Robinson told her that she would have to give him anything she earned as what he was going to show her wasn't free. JK received payment via cash or Cash App. JK further advised she did not have a Cash App account and believed Robinson's Cash App username included the word "gafflegang" which was the name of his clique.

24. Your affiant reviewed forensic reports obtained from the federal warrant executed on October 11, 2022. A review of the gold-colored Android phone which was seized from Robinson around 9/15/2022, appeared to show messages referencing commercial sex dates, to include agreements upon sex services to be provided, costs of services, and locations to meet. The Cash App account **"$gafflegang20"** and **"hattierobinson56"** were sent to customers as accounts to receive payment for commercial sex. Hattie Robinson is an older relative of Dwezkita Robinson.

9

KS
12/15/22

25. The following are excerpts of a text conversations with individuals who appeared to be potential customers:

**Text Conversation with individual aka "Trick 3" on 8/13/2022 (in part)**

...
| | |
|---|---|
| Phone | $Gafflegang20 |
| Trick 3 | Ok |

...
| | |
|---|---|
| Trick 3 | Um tryna get a date b4 I go |
| | Uma cashapp u |
| | K |
| Phone | $Hattierobinson56 |
| Trick 3 | Who |
| Phone | Uk who this is stop play with me |
| Trick 3 | Really don't |
| Phone | *Image of JK observed by LE on sex ad sent |

**Text Conversation with individual aka "Chris" from 8/13/2022 – 9/12/2022 (in part)**
(8/13/2022)
...
| | |
|---|---|
| Chris | This chris I want send you money for video chat |
| Phone | Cash app required first |
| Chris | You got duo |
| Phone | Yea I do |
| Chris | How much money |
| Phone | $50 |
| | $Hattierobinson56 |
| Chris | Ok call me on duo I send you money |
| Phone | Nope send me my money first then I'm call u Bec mf keep saying that ad when I do I don't get my money Soo send my money first then I'm call u |

(8/21/2022)
| | |
|---|---|
| Chris | This chris I want send you money for video chat |
| Phone | Send my money first |
| Chris | You got duo |
| Phone | Yes |
| Chris | What your cash app |
| Phone | $gafflegang20 |

...

(9/12/2022)
| | |
|---|---|
| Chris | This chris I want send you money for video chat |
| Phone | How long u tryna to video chat |

...

10

KS
12/15/22

26. A review of the Samsung Galaxy cell phone seized from JK around 7/28/2022, appeared to show messages referencing commercial sex dates, to include agreements upon sex services to be provided, costs of services, and locations to meet. Similar to previously referenced conversations, the Cash App account **"$honeymoongirl24"** was sent to a customer as an account to receive payment for commercial sex. Open source research showed the display name associated with the account as "Dyekita Robinson".

27. A review of the silver-colored iPhone S model that was seized from JK around 7/22/2022, appeared to show messages referencing commercial sex dates, to include agreements upon sex services to be provided, costs of services, and locations to meet. Similar to previously referenced conversations, the Cash App account **"$HattieJR56"** was sent to a customer as an account to receive payment for commercial sex. Open source research showed the display picture, associated with the account "$HattieJR56", appeared to be of Robinson wearing a hat. The account also appeared to be a Cash App business account. Investigators also observed an email address [JK]3@gmail.com, as being used on the iPhone S model phone. Open source research showed the email was associated with Cash App "$babyjjassy," with the display name "Babyj Jassy", which matched the username of JK's Facebook account.

28. A subpoena was sent to Sfanti Group Solutions SRL requesting subscriber information associated with Megapersonals.eu accounts associated with sex ads posted of JK online. On October 20, 2022, a US based representative of Sfanti Group Solutions SRL provided the requested information, which included email addresses associated with the requested accounts and login activity. The email address robinsonhattie97@gmail.com and [JK]18@gmail.com were associated with the requested ads. Open source research showed the email address robinsonhattie97@gmail.com was associated with the CashApp account "$hattierobinson56".



Open source research did not reveal an account for the email address [JK]18@gmail.com. Based on my knowledge and experience, I know that Cash App allows users to register and unregister emails and phone numbers associated with a Cash App account. Once changed, the account is no longer searchable using the old identifiers; however, Cash App keeps a record of all numbers and email addresses that were ever registered with the account.

29. Based on the forgoing factual information, your affiant submits there is probable cause to believe that a violation of 18 U.S.C § 1591 has been committed, and evidence and instrumentalities of this violation are located within the targeted accounts further described in **Attachments A and B** of this affidavit.

## JURISDICTION

30. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## CONCLUSION

31. Based on the forgoing information, your affiant submits there is probable cause to believe that a violation of 18 U.S.C § 1591 has been committed, and evidence can be found in the Target Accounts, stored at premises controlled by Block, Inc. Your affiant respectfully requests that the Court issue a search warrant authorizing the search and seizure of items described in **Attachment B** of this affidavit.

32. The application seeks a warrant to search all responsive records and information under the control of Block, Inc., a provider subject to the jurisdiction of this court, regardless of



where Block, Inc. has chosen to store such information.[1] The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscriber if such communication, record, or other information is within Block's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

33. Your affiant is aware that many providers of digital services, such as Block, Inc., have staff members who work shifts other than traditional business hours. Such staff members may at times be responsible for compiling materials responsive to search warrants. Therefore, your affiant requests that this warrant be executable at any time of the day or night, as that may be more convenient for the responding party.

34. Pursuant to 18 U.S.C § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

35. In consideration of the foregoing, your affiant respectfully requests that this Court issue a search warrant authorizing for the search of the Target Accounts, more specifically

---

[1] It is possible that Block, Inc. stores some portion of the information sought outside of the United States. Under the Clarifying Lawful Overseas Use of Data Act ("CLOUD Act") the Stored Communications Act was amended to require that communications providers in the United States respond to legal process and return relevant data regardless of the location of the servers containing the data.

KS
12/15/22

described in **Attachment A**, which is incorporated by reference as if fully set forth herein, authorizing the seizure and search of items described in **Attachment B**, incorporated herein.

AND FURTHER, AFFIANT SAITH NOT.

_____
Keyotta Sanford - AFFIANT
Special Agent,
Federal Bureau of Investigation.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 41 by telephone, this 15th day of December, 2022.

_____
HON. ANNIE T. CHRISTOFF
United States Magistrate Judge

14

KS
12/15/22